Okay, the next case is Asphalt Traders v. Beall, 22-4085. We'll hear from the counsel. Good morning, Your Honors, and may it please the Court. Alan Morrison for Asphalt Trader Limited. I will attempt to reserve a few minutes of time for rebuttal. Upon domesticating its judgment against Taron Capital Energy LLC in Utah, Asphalt went about trying to collect on that judgment. When it learned that Taron no longer held any assets, it did what judgment creditors have done for decades, if not centuries. It brought alter ego and fraudulent transfer claims against a third party. In this case, the founder and sole member of the LLC. The presented summary judgment in favor of Taron and Mr. Beall, the defendants, on the alter ego claim, on the ground that the fraudulent transfer claim provided an adequate remedy at law. Is that accurate? Because there is the summary affirmance angle here, which is that you never pleaded that, you didn't plead it right on the alter ego. If you're referring to the complaint, we absolutely pled it right in the sense that we went, in our complaint, we make the allegation that we held the judgment against Taron, that Taron had refused to satisfy the judgment, and that we were, therefore, without an adequate remedy at law. As a result of lacking an adequate remedy at law on our breach of contract claim, we brought equitable claims against a third party seeking to collect the judgment that we could not collect from Taron. That pleading approach is followed universally in terms of in the judgment context. After a party has secured a judgment and then is unable to satisfy that judgment against the judgment debtor, it routinely brings subsequent equitable claims to recover from a third party. If you read Judge Nielsen's order, he's not talking about the adequacy of the pleading. He's not talking about the complaint. He's talking about MJ versus Wasson, the Utah Supreme Court's decision that talks about, embraces the general principle that adequate remedies at law displace equitable theories of relief. What I'm saying is that under MJ, the inadequacy of a remedy at law is an element of an alter ego claim, and you didn't plead or prove that element. To the extent it's an element, we did plead and prove it because we said in our complaint that the breach of contract, we did not have a remedy on the breach of contract claim. That is the inadequate remedy that we pleaded. I don't know what else we could have provided in our complaint to demonstrate that we lacked an adequate remedy at law because we could not collect on our breach of contract claim. If you turn to the overall ruling, Judge Nielsen's ruling, it was error for three independent reasons, any one of which is sufficient to rule in our favor. If the court would prefer not to dive in or delve into the admittedly naughtier question of whether fraudulent transfer claims under Utah law are equitable or legal in nature, it can affirm based purely on the notion that the fraudulent transfer claim did not constitute an adequate remedy at law on the summary judgment papers that were before the district court. At page 102 of appellant's appendix, we very clearly state that what we are seeking on the fraudulent transfer claim is less than $450,000 to basically recoup the monies that were fraudulently transferred. This is in your motion for summary judgment? This is in our motion for summary judgment. And on page 1271 of the record in your complaint, you seek damages in the amount of all fraudulent transfers, right? Yes. And in the summary judgment, in Bill's motion for summary judgment, there is the fraudulent transfer reference sheet which shows transfers of roughly, say, $2 to $3.8 million, right? In that piece of paper. That may be true. Alright. So if you are, and you're the proponent of that fraudulent transfer reference sheet, you're the one that created that and provided that, right? I'm not confident that's the case. What I know is that we claimed in our summary judgment motion less than $450,000. In your motion for summary judgment. Well, you know, a lot of times I might be a plaintiff and I might say, well, as a matter of law, I'm entitled to $25, but I do want the jury to reward me $25 million. I want you, Judge Nielsen, to adjudicate as a matter of law that I'm entitled to $450,000, but if you plead in your amended complaint, I want damages in the amount of all fraudulent transfers. Point number two, here's the piece of paper that shows all the fraudulent transfers that Beale made, and that shows between $2 million to $3.8 million. It doesn't take a rocket scientist to infer, okay, well, you're wanting damages in the amount of $2 to $3.8 million, right? No, I don't think that's right in terms of the summary judgment standard of review. When we're talking about whether to remove an alter ego claim, whether to dismiss an alter ego claim based on a fraudulent transfer claim, we have to view the record in the light most favorable to the non-moving party, which in this case is us, and so in terms of summary judgment being granted against us, we're the non-moving party, and so in evaluating the adequacy of the fraudulent transfer remedy, we view the record in the light most favorable to asphalt, and asphalt's position ... You are asking for damages for only $450,000 when that was just your request for adjudication in your favor as the claimant. Because that was the argument that we placed before the district court. That's the number we gave the district court. If you're unconvinced by that point, then you probably do have to address the naughtier question of whether fraudulent transfer claims are equitable under Utah law. It is clear that they are. If you look at the Utah Supreme Court's 1974 decision in Jensen v. Eames, very clearly refers to judgment creditors seeking to recoup fraudulently conveyed assets through a creditor's bill in equity. That's exactly what is happening here. A judgment creditor is seeking to set aside fraudulent transfers and recoup the money associated with those transfers. What they say is that a creditor's ... This is not a creditor's bill, and they give us some officially attractive definitions of a creditor's bill and say this is not a creditor's bill. A creditor's bill is when you attach a lien to a particular property. Here you're trying to set aside particular transfers. I understand that. My point is that the relief that's sought in both contexts is setting aside a transfer. If you read Jensen, the judgment creditor is seeking to execute on fraudulently transferred stock. That's exactly the relief we are seeking here, and that's exactly what the court in Jensen referred to as equitable relief. It's judicial conduct that you're asking the court to engage in that is going to ultimately, yes, provide you with monetary relief, but monetary relief that is ancillary to the equitable relief that you're seeking. Those are the two main grounds on which the district court erred in holding that asphalt had an adequate remedy of law on its fraudulent transfer claim. If there are no further questions, I'll reserve the rest of my time. I have a question. Okay. Why not certify this question to the Utah Supreme Court? Well, you shouldn't certify it, and the initial answer I was going to give, which may not be persuasive to Judge Bachrach, is because the easier route is to hold it on this record it did not provide an adequate remedy of law. If that is not persuasive to you, then I think Jensen, which is a Utah Supreme Court decision on this scenario of a judgment creditor seeking to recover a judgment debt through a fraudulent conveyance action. So I think it's already established under Utah law. Well, you referred in your opening statement that it was the knottier question or the harder question. So even, I mean, are you suggesting there isn't authority on both sides? Well, what I would say is I don't have Utah authority that states as directly as I would like it to that a fraudulent transfer claim is an equitable cause of action. We cited out-of-state cases from Nebraska and South Carolina and this court interpreting Colorado law that it's an equitable cause of action. The closest I have is Jensen. There is a Utah Court of Appeals decision that doesn't deal with fraudulent transfer claims but does say that seeking monetary damages does not make an equitable claim legal. So those are the two main points against certification. And as well, even the Utah Supreme Court's most recent comment on equitable versus legal remedies is Wittingham. And in that case, the court seemed to suggest the trial court had to make findings of fact and reach conclusions of law before deciding whether the legal remedy displaced the equitable one, which again suggests that we have more work to do in the district court before this issue becomes truly ripe. At summary judgment, what was the evidence that you offer to show the element of an alter ego claim that your remedy, a law, would be inadequate? What was the evidence? The evidence was that Tarrin lacked assets as the judgment debtor. Tarrin was the judgment debtor responsible for the $2.3 million judgment. Was it posed to the district court that way, that here we are on summary judgment and there's this element and here's our evidence that we're using to satisfy that element? Are the arguments that you're making on appeal something that didn't come to the district court? Well, in all candor, the adequate remedy of law issue was, you know, to call it an afterthought and the briefing below is an insult to afterthoughts because it occupied a page and a half of 250, 300 pages of briefing. They argued it in a page. We argued it in a half a page. They did not respond in the reply memo. I'm confident both sides were surprised that Judge Nielsen latched onto that principle to rule in their favor. We introduced evidence that Tarrin did not have the assets to satisfy the judgment, which in our view demonstrated to the district court the inadequacy of our remedy of law. And with that, I'll... I'm sorry. No, you're good. I've got a two-part question. Do you think that the Utah Supreme Court would follow the United States Supreme Court? And number two, how do you distinguish grand financiera? Well, I'll answer both parts in one condensed form, and that is that grand financiera, on my reading of grand financiera, relied almost exclusively on the fact that monetary damages were sought. So it adopted the position that in the fraudulent transfer context, yes, if you're seeking to set aside a transfer, avoid a transfer, appoint a receiver, take other steps, yeah, those are all equitable. But if you seek money damages, then it's not equitable. And Utah law simply rejects that proposition. Anderson v. Larry Miller Corporation very clearly states that the fact that money damages are sought does not transform an equitable claim. So you see, and I don't want to put words in your mouth, because it's an interesting question. You may be right. But you're saying, whether it's the Supreme Court or not, whether they're in Washington or not, the Utah Supreme Court would reject in applying Utah law what the United States Supreme Court said. I don't think there's really any question that they would reject it. And I think that grand financiera, I'm persuaded, it doesn't matter, because that's a question of federal law versus a question of Utah law, right? And the Utah Supreme Court is the final arbiter on the meaning of truth. True. Equity is equity. One could argue equity is equity in legal remedies or legal remedies. Well, in terms of what governs, I don't think the Utah Supreme Court is governed by grand financiera. And if you look at a lot of other state Supreme Courts, they have not considered themselves governed by grand financiera's approach to fraudulent transfers as equitable conveyances. And I think that only demonstrates how limited the record is, the arguments were before the district court, that he just latched on to grand financiera without really assessing Utah law on this question. All right. Thank you. I cheat completely. You were about to say, give him a minute. Well, we're nothing but fair, so we're going to give you an extra minute. Doesn't mean you have to use it. Pardon? It does not mean you are legally required to use your extra minute. I'm sorry, Your Honor. I didn't catch that. Okay. I've given him an extra minute because I cheated him out of his rebuttal time. But as a consequence, I've given you an extra minute, but you are not under any legal compulsion to use your extra minute. But if you want to, you can. Thank you, Your Honor. All right. Good morning, and may it please the court. Stephen Luesli on behalf of the defendants and the appellees, Robert Scott Bill and Terran Energy Company. And I think it's, first of all, very important to identify what the issue is here. And I would submit that the issue is quite narrow. There are two claims for relief that are at issue. One is the alter ego claim against Mr. Bill, which is undoubtedly an equitable claim. And a required element is that the plaintiff demonstrate the absence of an adequate remedy of law. The second claim that is at issue is the fraudulent transfer claim. And the trial court on summary judgment concluded that the alter ego claim should be dismissed because asphalt trader failed to even argue, let alone establish, that there was the absence of an adequate remedy of law based upon the fraudulent transfer claim. So that's the issue. Did the trial court properly dismiss the alter ego claim because asphalt trader failed to even argue, let alone try and establish, that there was the absence of an adequate remedy of law? But they adjudicated it. I mean, so once the district judge adjudicates the issue, then I think our cases say there is no forfeiture because... Well, I disagree with that, Your Honor. And let me explain that. That ties into the preservation issue that we raised also. And we need to understand the context here. The context is that Mr. Bill filed a motion for summary judgment under the Celotex standard. That, of course, is the United States Supreme Court standard that says that a party that doesn't bear the burden of persuasion can move for summary judgment, pointing out that there's no evidence to establish a key element of the opposing party's claim. And when that happens, the opposing party is obliged to step forward and to pinpoint specific evidence, an argument, to identify that there's something here to support this essential element of the claim. Mr. Bill filed that kind of a motion. We cited in our summary judgment brief the Celotex standard in this court's cases describing that standard, and we addressed the essential elements of this alter ego claim. We said it's an equitable claim. We said that you have to, and we're referencing Utah law here, that you have to demonstrate that there is the absence of an adequate remedy of law. We pointed out that the Utah cases say that you have to both plead and prove the absence of an adequate remedy of law. And we pointed out that there's nothing in the complaint that addresses that very essential element of Asphalt's claim. We pointed out that even the record suggests that there is an adequate remedy in the form of a fraudulent transfer remedy. And what's the response from Asphalt? There's no response at all. And the district court, based upon that essentially, said that you Asphalt, you failed to comply with the Celotex standard. You failed to even try to support that claim and therefore dismiss. So in that context, can we say that the district court ruled on this issue such that it preserves the ability of Asphalt to make all the arguments to try and point to the evidence in the record when it failed to do that at the trial court level? I don't think that's adequate preservation. What the district court determined, it didn't evaluate Asphalt's arguments or its evidence that pointed to it. It simply said, you didn't try and support it. And the district court simply cited the basic points of law and said, you Asphalt have given me nothing. And therefore, we're dismissing this claim. So I don't think that can be viewed as an invitation that when a party fails to step forward and support at the trial court level, then at the appellate level, that that party can now make all the arguments and try and point to the evidence, which it didn't do in the trial court. That's not fair to the trial court. It's not fair to Mr. Bill. Judge Nelson was very meticulous and careful in his rulings. And Asphalt gave him nothing with respect to which it could consider or evidence that it should consider to determine that there was the absence of an adequate remedy of law. And it's not fair to Mr. Bill. I mean, the arguments you're hearing today and that are in the briefs, Asphalt didn't make them in the trial court. They're now here made for the first time. And again, the very narrow issue that Judge Nelson relied upon was simply that you Asphalt given a motion under the Celotek standard, you haven't come forward with evidence or argument to support your claim. And that's, I don't believe that's, that's the way that the trial court ruled should not preserve the ability of Asphalt here and now on appeal to make all the arguments point to the evidence that it failed to, when it failed to do that in the trial court. What sort of evidence would have sufficed? I'm sorry? What sort of evidence would have sufficed? Well, we're, we're in a sense arguing that in the vacuum because it didn't make those arguments at the trial court level. But, but the argument we're hearing now is that there is the absence of an adequate remedy of law because Tarrant couldn't satisfy the judgment. And that, that doesn't work. That doesn't work at all. If that worked, that would mean that every time a corporate entity or an LLC couldn't pay a judgment, then automatically the absence of an adequate remedy of law is, is satisfied. And that, that cannot be the case, can it? The issue here is, it has to do with the two claims against Mr. Bill, the Arthur Eagle claim and the fraudulent transfer claim. And the question is, as to those claims against Mr. Bill, whether or not the fraudulent transfer claim is an adequate remedy for the Arthur Eagle claim. What would satisfy that standard? I haven't seen anything argued here that could or would, certainly nothing that was argued before the trial court. And another argument we hear on a tail, and again, will not make the trial court, is that the, the, in the summary judgment motion, the, the plaintiff only sought 400 or so thousand dollars and Judge Nelson didn't get, didn't consider that argument. But does that, that really work when you consider what the Arthur Eagle standard is? The Arthur Eagle standard is that you, you, you need to find some way that due to the way the company is operated, that the, the plaintiff was injured. And if the plaintiff, if, if the, in this case, Taron made transfers of a certain sum, wouldn't the, the plaintiff be satisfied in terms of correcting the injury through those transfers? And it would be a windfall if, you know, there's a, you would get something beyond what the, what the amount of the fraudulent transfers were. So that, that, that doesn't work either, but, but as the court already mentioned, the fraudulent transfer sheet was submitted to the court and that showed something like $2 million in transfers as prepared by Asphalt. That was submitted to the court by Asphalt. And it also prepared another document that showed up to like $3.8 million in fraudulent transfers. So if, if those were the amount of the... What was the other document? I thought it was the fraudulent transfer reference sheet that you were relying on to show the range between 2 and 3.8 million. So... Right. There were two different documents to prepare. One of them was the fraudulent transfer sheet and that, that was something that we forced Asphalt to prepare that through discovery. We want to know what the transfers were. They, they wouldn't tell us the specific transfers. And in discovery, we required that they do so and that's what they generated and that's what they submitted to the trial court as a part of the summary judgment proceeding. Judge Milton wanted more and he asked the parties to submit information showing all the transfers from Taryn to Bill and which part of those transfers were legitimate business expenses. And that's a separate document that Asphalt submitted that shows something like $3.8 million in transfers from Taryn to Bill and Asphalt said that only 120,000 were proper business expenses. So there's that there in the record, but Asphalt never made an attempt to argue or explain to the trial court how any of that tied in to whether or not there was an adequate remedy at law. That's, that's new here before this court. A counsel addressed the point of whether a fraudulent transfer claim is a legal remedy or an equitable remedy. And the point that is made, and it's a point that Asphalt has to make here, else it loses. The point it makes is that all fraudulent transfer claims are legal claims without exception. And that's not what the Utah cases say. The Utah cases say that if you want to distinguish between a legal claim and an equitable claim, you look at the remedies that are sought. And of course, a variety of remedies may be sought with respect to any particular kind of claim. And really, if you look at the cases, you can identify a few categories of potential types of claims, fraudulent transfer claims, in relation to whether they are legal or equitable. One is what we have here, and that's a grand financier case where a plaintiff merely says, money was transferred to the transferee, Mr. Bill, and I want a money judgment. And no other way they've sought, that's a legal claim. And the Utah cases talk about how you look at the remedies. And if it's money that is sought, it's a legal claim. And if there's other kinds of remedies sought, it might be something different. Now, on the other side of the spectrum, in terms of fraudulent transfer claims and whether they are legal or equitable, you have what this court addressed in the Kraus case and the Wilhite case. And the Kraus case is a taxpayer debtor, didn't want to pay his taxes. And so he set up a trust, and he transferred his assets to the trust. And the beneficiaries of the trust were his children, and the trustee was his brother. But even though he technically and legally put that, his assets and his trust, he was really treating those assets as his own. And the court in Kraus described that as a nominee theory of liability under fraudulent transfer law. And that's where, even though something is technically owned by a third party to whom those assets are transferred, the transferor debtor is treating them as his own, using those assets for personal expenses. And that's the sort of claim, fraudulent transfer claim, that is an equitable claim because the plaintiff is contending that he has an equitable interest or that the transferor really equitably still owns the assets in the trust. And the plaintiff could assert a constructive trust or an equitable lien or some kind of equitable ownership as to the transferor in those assets. And that's where a fraudulent transfer claim becomes an equitable claim because you're seeking the equitable type of relief. And then there's another claim that could be somewhere in the middle where a plaintiff may be asserting both equitable and legal relief, may be seeking money damages, but may be seeking an accounting or a constructive trust. And that might be a more difficult call as to a court, should this be considered a legal claim or an equitable claim? We don't have that here. We're over on this end of the spectrum where plaintiff merely sought money damages based on money transfers, period. No other order of these sought. In that circumstances, I don't understand how there can be any argument that the plaintiff sought a legal claim. And that's why Asphalt has to make a very difficult argument that all fraudulent transfer claims are legal without regard to the relief sought. And that's a tough argument to make. The final point that I want to address, Your Honor, is that there was a trial here, Your Honors. And Asphalt argues that this court should ignore the fact that there was a trial and should focus only on the summary judgment pleadings and the summary judgment standard of review. The difficulty of that is that there, and the trial was as to the fraudulent transfer claim, but the difficulty with Asphalt's position is that there is a overwhelming overlap as to the evidence between the alter ego claim and the fraudulent transfer claim. And if you read Asphalt's brief here, it cites a good portion of the facts it cites contradict dramatically the findings made by the trial court at trial. Didn't we specifically reject that kind of argument in Hartage? This exact same argument was made, and we said, as an appellate court reviewing the materials before the court at the time that the rule was made. Here, SSC is attempting to give a retroactive effect to the determination by the district court at the remedy phase of the trial that the excavation component of the government's trial as remedy is inconsistent with the NCP. We don't know under Rule 56, based on the evidentiary submissions that were submitted in, what was going to be presented at trial or the adjudication at trial. Well, I would suggest, Your Honor, there is more nuance to the court's case law. And I would refer to the court, to the Sanpete case, and that's a court where the trial court dealt with two claims and on summary judgment dismissed one of the claims. The other claim went to trial and both claims were dismissed. One summary judgment, one at trial. There was an appeal, and this court said that even if there was an error with respect to dismissal on summary judgment of one claim, there was such an overlap here that that was a harmless error because it was clear from the trial record that that claim could not succeed. That's the Sanpete case. And that's what we have here. If you look at the summary judgment motion, a motion that's filed by the party, then especially asphalt's motion for summary judgment, and you look at the various representations, facts, arguments, they duplicate to a great extent the assertions and the arguments and the facts asserted in the trial brief. And if you look at the findings of the trial court, I mean, the Alter Ego claim is based upon financial relationship between asphalt and, or excuse me, Taron and Mr. And all the findings made by the trial court undercut the Alter Ego claim. Judge Nelson's found that there was consideration given for the transfers. There's no impropriety in the financial relationship. There's no commingling of assets. All those things make it impossible for asphalt to prevail unless, on remand, the court, the trial court discards or changes the findings that have made a trial. Thank you. Did you cite the Sanpete case in your brief? Asphalt did. I did not. In its reply brief, asphalt cites that brief. All right. Thank you. The Sanpete case. I'll try to make a few quick, very quick points. Starting with the Sanpete case, three components there that are not present here. One, they did not include in the record all of the summary judgment materials. Two, there was exact duplication, which if you read BYU v. Trimco, Utah Supreme Court, 2007, they draw a very clear distinction between trial-through-egal claims and fraudulent transfer claims. They are not the same. And three, it's unfair to the losing party on summary judgment to retroactively justify a summary judgment ruling based on what's found at trial. On the procedural preservation point, I would urge you to read what Taryn argued in its motion, 674 and 675 of the appellant's appendix. That's it. Whether it suffice to preserve what it's arguing on appeal and preserve what Judge Nielsen held, because it was not substantive. It was a pleading argument and we pointed the court to Utah cases that had allowed fraudulent transfer claims and alter ego claims to be brought together. For those reasons, we'd ask that you reverse the district court's grant of summary judgment. Thank you. Thank you. This matter will be submitted. Counsel for both sides, I think, did a very good job. Appreciate your advocacy.